**WILKERSON et al. v. DAVIS et al.**
(No. 6759.)

(Court of Civil Appeals of Texas. Austin.
June 11, 1924. Rehearing Denied
July 5, 1924.)

1. **Partition** ⬅63(3)—**Finding that excess acreage was allotted held unwarranted.**

In suit between children, who partitioned by deed their deceased father's lands, to recover value of excess acreage allotted to defendant by mistake, a finding that defendant received two acres excess was unwarranted, where field notes of his deed included only acreage intended, notwithstanding his fence for many years had included two acres not within field notes of father's deed nor within those of partition deed, since title thereto, if ever in estate, was by limitation and did not pass by partition deed, but remained in estate.

2. **Partition** ⬅63(3)—**Evidence held insufficient to establish value of excess acreage as fixed by trial court.**

Where partition was by deed, in subsequent suit to effect partition of remaining land and for money judgment for land received by certain defendants in excess of acreage intended, evidence *held* insufficient to fix value of excess in certain tract at $150 per acre.

3. **Appeal and error** ⬅1011(1)—**Court's finding on conflicting evidence not disturbed unless manifestly wrong.**

Where evidence is conflicting, appellate court will not disturb findings of fact by trial court unless so against overwhelming preponderance of evidence as to be manifestly wrong.

4. **Partition** ⬅63(3)—**Finding that plaintiff received insufficient portion by deed held unsupported by evidence.**

Finding that plaintiff received five acres of land less than was intended in partition by deed, and was entitled to recover value thereof, *held* unsupported by evidence showing that, if the value of the part received by her differed from that of other parts, hers was the greater in value.

---

**5. Partition ☞4—Amicable partition by deed not disturbed unless inequalities substantial.**

Amicable partition by deeds between several immediate members of a family without intervention of courts should not be disturbed unless the inequalities are substantial.

**6. Parties ☞42—Intervener held guilty of laches precluding intervention after judgment.**

Plea of intervention by assignee for benefit of creditors of one defendant, filed nearly one month after judgment in partition, was properly stricken for laches, where assignee's attorneys knew of pendency of partition suit at time of assignment, but plaintiffs had no knowledge of assignment.

Error from District Court, Milam County; John Watson, Judge.

Partition by Maud Davis and another against W. A. Wilkerson and others, in which Mrs. Geneva Lankford and others were substituted for plaintiffs. Partition and money judgment rendered, and defendants bring error. Reversed in part and rendered. Affirmed in part.

See, also, 256 S. W. 944.

J. K. Freeman, R. B. Pool, and W. A. Morrison, all of Cameron, for plaintiffs in error.

T. V. Adams, of Buckholts, and Chambers, Wallace & Gillis, of Cameron, for defendants in error.

BAUGH, J. W. W. Wilkerson died in Milam county, Tex., in January, 1915, leaving a will in which he devised to his surviving wife, Susan H. Wilkerson, a life estate in his property, and upon her death provided that all of same should go to their eight children, share and share alike. W. A. Wilkerson, a son, was named in his will as joint executor with his mother. Susan H. Wilkerson died intestate in May, 1921. But before she died an effort was made to partition amicably and out of court the entire estate, a part of which consisted of. 563½ acres of land in Milam county, involved in this suit. This land was of irregular shape extending from Elm creek, which was its western boundary, almost due east a distance of approximately 4,250 varas. Its width, north and south, varied from about 350 varas at its narrowest point to about 1,050 varas at its widest part. W. A. Wilkerson, acting with the consent and approval of several of the other children, employed surveyors and sought to divide this tract as nearly as possible into eight portions of equal value. Portion No. 1 was on the east end of the tract, and was surveyed and platted to contain 78 acres. Portions Nos. 2, 3, 4, 5, 6, and 7 ran consecutively westward in cross-sections north and south, and were each surveyed and platted to contain 65 acres. Portion No. 8, because of its lesser value per

acre, was surveyed and platted to contain 95½ acres. In doing so it was assumed that Elm creek, constituting its western boundary, ran in a straight line.

Each of these portions were numbered, its number placed in an envelope, and each of the heirs drew one from a hat. In the drawing Mrs. I. D. Bryant drew portion No. 4, and I. M. Wilkerson, her brother, drew No. 8. At her special request, these two exchanged numbers, giving her portion No. 8. This drawing occurred some time in 1919, while Mrs. Susan H. Wilkerson was still alive; but due to the dissatisfaction of J. A. Wilkerson, who drew portion No. 1, this partition was not consummated. Being unable to procure a partition by deed, Maud Davis, one of the daughters, joined by her husband, filed suit for partition in the district court of Milam county, in August, 1921, shortly after their mother died. Thereupon W. A. Wilkerson, who drew portion No. 7, in order to effect a partition by deed, exchanged his number with J. A. Wilkerson, who drew No. 1, and all parties on September 15, 1921, executed partition deeds to each other, and all went into possession of their respective tracts. The original partition suit still remained on the docket, and upon motion granted, Mrs. Geneva Lankford and Mrs. I. D. Bryant, daughters, joined by their husbands, were subsequently made plaintiffs instead of defendants; and in March, 1923, in a fifth amended petition, in addition to seeking a partition of the remaining property or sale of such as was incapable of partition, these plaintiffs alleged certain errors in the original surveys on which the partition of the 563½ acres was made, and mutual mistake as to the amount of lands included in three portions as follows: That W. A. Wilkerson, in fact, got 80 acres instead of 78 acres as was intended, said 2 acres excess being valued at $320; that Dave Wilkerson got 68 acres instead of 65, as was intended, said 3 acres excess being valued at $520; that Mrs. I. D. Bryant got only 90.62 acres instead of 95½ acres as was intended, her shortage being valued at $880. Plaintiffs further alleged that had they known of such inequalities in acreage at the time they would not have executed the partition deeds, and asked for an equitable adjustment out of the remaining undivided portion of the estate so as to equalize the respective interests.

The defendants in addition to exceptions and denials pleaded acceptance and recording of the partition deeds; that plaintiffs had gone into possession of the lands and had ratified the deeds; that the portion of Mrs. Bryant was worth $1,000 more than any other tract; that Maud Davis had accepted her tract, sold it, and appropriated the money; that Geneva Lankford, the other plaintiff, had likewise sold hers and appro-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

priated the money; and that both were therefore estopped to claim a repartition of these lands. It is not necessary for our purpose to set out here the extensive allegations made by all parties to the suit.

The case was submitted to the court without the intervention of a jury, and the court rendered a judgment partitioning all of the remainder of the property belonging to the estate and awarding a judgment in favor of Ida Dorcas Bryant against all of the parties to the suit in excess of her one-eighth distributive share of said property, the sum of $750, less an amount of $65 owed by her to the estate, and also rendered a judgment in favor of the plaintiffs against David Wilkerson for $450, in addition to $95 owed by him to the estate and charged his interest in the estate with $545; and also rendered judgment in favor of the plaintiffs against William Anse Wilkerson for the sum of $200, to be deducted from his distributive share of the estate, and appointed a receiver to take charge of the property; to which judgment the plaintiffs in error duly excepted and gave notice of appeal.

[1] Plaintiffs in error bring this case before us for review upon five assignments of error, the first four of which relate to findings of fact by the trial court upon which judgment was rendered. The first assignment asserts error of the trial court in finding that—

"The defendant W. A. Wilkerson had received two acres of land more than it was intended he should receive, and that the value of said excess was $200."

This assignment is sustained. W. A. Wilkerson received tract No. 1, on the east end of the larger 563½-acre tract. In making the survey of this tract the surveyor followed for distance and direction the field notes in the old deed made in 1887 to W. W. Wilkerson. It is not disputed that the actual field notes set out in the partition deed from the other seven heirs to W. A. Wilkerson includes only 78 acres of land. The evidence tended to show, however, that the old Wilkerson fence line on the east side had been for many years set over 23 varas further east then the old field notes called for, which included about 2 acres of land within the Wilkerson fence not included within the field notes of the old Wilkerson deed, nor in the partition deed to W. A. Wilkerson. Hence, if the W. W. Wilkerson estate owned this 2 acres, it had title only by limitation; and not having divested themselves of any title to the 2 acres excess claimed by plaintiffs to belong to W. A. Wilkerson, and the said W. A. Wilkerson having acquired no title to it in the partition deeds from the other heirs, the title thereto, if ever in the estate, still remained there after the partition deeds were executed. If W. A. Wilkerson did not get this 2 acres, it is immaterial as to its value. We think the court's finding on this question was not supported by the evidence, but was contrary to the undisputed evidence, and that such findings of fact and the judgment based thereon were, as to W. A. Wilkerson, erroneous.

Plaintiffs in error's second assignment asserts error of the trial court in finding, and rendering judgment accordingly, that the defendant David Wilkerson "had received 3 acres of land more than he was entitled to receive in said agreement, and that the value of such excess is $450."

[2, 3] It appears from the undisputed testimony that tract No. 5, which Dave Wilkerson drew, was originally platted and intended to contain 65 acres, but that through error it did in fact contain 68 acres, and that he received this amount in the partition. It also seems undisputed that the land in tracts 3, 4, 5, and 6 is very similar in character and perhaps of about the same value per acre. Each of these other tracts contained 65 acres. The court's finding as to the acreage received by Dave Wilkerson was correct, but we think there was error in finding its value at $450, or $150 per acre. The rule is well established that where the evidence is conflicting the appellate court will not disturb findings of fact by the trial court, unless so against the overwhelming preponderance of the evidence as to be manifestly wrong. There was testimony, it is true, in support of the trial court's findings as to value of this land, but it was so speculative and incompetent that we can scarcely consider it as of any probative value. Some of the witnesses testified that in the effort at partition in 1919, the eight portions were valued at $10,000 each; but we find no testimony as to their value in September, 1921, when the partition deeds were actually executed. Nor was there any effort to arrive at the actual market value of the separate tracts at any time. The valuation named was merely estimated in the effort to arrive at an equal division of the 563½-acre tract and was not competent to prove market value of acreage in detail. None of the witnesses testified as to the actual market value in September, 1921, of the particular tract of Dave Wilkerson. Two of plaintiffs' witnesses testified that a fair market value of similar lands in the other tracts of this survey was about $100 per acre. The witness A. W. Mowdy testified with reference to the value of the land immediately east of tract No. 8, which would be tract No. 7, across the public road and some distance away from tract No. 5, and placed an estimated valuation of $150 per acre thereon. This witness, however, did not qualify as to market value, and his testimony on that point is as follows:

"I suppose the fair market value of the land that is not broken is something around like

$150 per acre. That is what it sells for if any sales are being made."

No sales were shown to have been made in that vicinity except the sale by Mrs. Lankford of her tract No. 2, consisting of 65 acres, located east of Dave Wilkerson's tract, in March, 1923, for $7,000. Mowdy's testimony was speculative, vague, merely an estimate, and had little or no probative value. A careful reading of all the evidence leads us to the conclusion that there was not sufficient evidence as a matter of law to sustain the court's finding that the 3 acres excess received by Dave Wilkerson was worth $450, and that such finding and judgment based thereon were erroneous.

[4] The third assignment is that the trial court erred in its finding of fact and judgment based thereon that Ida Dorcas Bryant, one of the plaintiffs, "received 5 acres of land less than she was entitled to receive under said agreement, and that the value of such deficiency was $750."

This assignment is sustained. Her tract No. 8, for which she traded, was the old home place on which she had lived for a number of years prior to the partition. It contained three wells and considerable other improvements. It was originally surveyed and platted to contain 95½ acres. This computation was based on the assumption that Elm creek, which formed the west boundary, ran in a straight line. The finding of the court as to the 5 acres shortage was evidently an approximation and is not supported by the evidence. The greatest shortage shown by the testimony of any witness is that of the surveyor Criswell, which showed 4.88 acres, and the record shows that he did not follow, in making his survey, the call made in her deed for the western boundary line of tract No. 8. If he had, running from the S. E. corner of this tract, it would have included an additional 1.75 acres, thus reducing the shortage to 3.13 acres. According to Walker's testimony, and he surveyed it twice, assuming the creek to be a straight line, the shortage at most was 3.6 acres. However, the creek made a bend eastward and into the tract, and would increase the shortage by whatever area the bend excluded. This amount is not shown. The finding as to the exact 5 acres is therefore not supported by any of the evidence. Nor is the finding of the court as to the value of this acreage. We have already discussed the testimony as to value above. The court also erroneously found that whatever shortage there was all occurred on the east side of the tract where the best land was situated. The evidence, however, shows that a portion of whatever shortage there was arose from the fact that Elm creek, instead of being straight, made a bend eastward on the west boundary of the tract, and that this reduced the size

of the tract on that side from what it was originally computed to contain.

The view this court takes of the case, however, makes these matters of little consequence. Undoubtedly there was in fact a shortage of some 3 or 4 acres in Mrs. Bryant's tract from what it was originally estimated to contain, and what all parties thought it did contain at the time the partition deeds were executed. Both Mrs. Bryant and her husband testified that it was less valuable than the other tracts. W. T. Mowdy, who did not qualify on market values of land, testified that if he were buying tract No. 7 just east of No. 8, containing 65 acres and drawn by J. A. Wilkerson, he would pay $1,000 more for it than for the Bryant tract. But Mrs. Bryant admitted that she refused to sell it to W. A. Wilkerson soon after she got it for $10,000, which was the highest value placed on any of the tracts. Mrs. Lankford subsequently sold her tract for $7,000. Walker, the surveyor, who had known the land for 30 years, testified that tract No. 8, Mrs. Bryant's tract, was worth from $1,200 to $1,500 more than any one of the other seven tracts. George Locke, another disinterested witness, who had lived near and known the land for 35 years, testified that tract No. 8, even if it did not contain but 90 acres, was worth somewhere between $1,000 and $1,200 more than the other tracts. I. M. Wilkerson, Mrs. Bryant's brother, testified as follows:

"At the time the deeds were executed, I thought there was a right smart difference in value, something like $1,000. I drew the tract that Mrs. Bryant now has, and I exchanged to satisfy her and get a settlement. I will exchange back with her right now."

Litt Barrett, another disinterested witness, who had lived in the neighborhood of this land for 25 years, testified:

"In my opinion, the Bryant tract of land is worth more than any of the seven tracts; at least $1,000 or $1,500 more."

W. A. Wilkerson, another brother, and one whom Mrs. Bryant charged with getting 2 acres more than he was entitled to, and who had lived there for 47 years, testified:

"I know the market value of lands out there pretty well, and I think Bryant got the best of the bargain. I would say he got from $2,000 to $2,500 the best of the trade. I have already stated that I would trade my tract for it."

This same brother had theretofore offered Mrs. Bryant $10,000 for her tract, and she refused it. She likewise refused to state on the witness stand whether she would exchange her tract for any one of the other seven tracts.

[5] So, we think it is immaterial whether her tract was 3, 4, or 5 acres short of the estimated 95½ acres originally intended for

WILKERSON v. DAVIS 549
(264 S.W.)

it. The overwhelming preponderance of the competent and disinterested evidence, in our opinion, leads to the conclusion that Mrs. Bryant has suffered no injury in the original partition by deeds of the 563½ acre tract, but that on the contrary, if there be any appreciable difference in value of the respective tracts, she received the most valuable tract. We have concluded that as a matter of law the finding of the trial court and his judgment thereon, as complained of, is as to Mrs. Bryant without sufficient evidence to support it. In cases like the one before us, where lands of differing or varying quality and character are to be divided, exact equality of portions is virtually impossible. At best any such division is only an approximation as to equality of tracts, and respective comparative values will necessarily vary with different viewpoints of different people. And where an estate has been amicably partitioned by deeds between several immediate members of the same family, without the intervention of the courts, such partitions when made should not be disturbed unless the inequalities are substantial. Lawsuits between brothers and sisters over parental devises or inheritances almost invariably lead to bitterness and discord, and as a matter of public policy should be discouraged whenever practicable. In the instant case all parties had accepted and gone into possession of their distributive shares in the lands; some of them had sold in whole or in part; others had materially improved theirs; and one had mortgaged his tract. The injuries to those complaining were more imaginary than real, and should never have been the source of litigation.

The disposition of assignments 1, 2 and 3 makes discussion of the fourth assignment unnecessary.

[6] In their fifth assignment, plaintiffs in error complain of the action of the trial court in striking out a plea in intervention filed in said case by one Robert McLane. This plea was filed April 23, 1923. Final judgment was rendered in the case March 26, 1923, nearly a month before.

W. A. Wilkerson had on December 26, 1921, made an assignment to Robert McLane for the benefit of his creditors of all his property, both real and personal, not exempt by law. This assignment was not filed for record until April 21, 1923, having up to that time been in possession of one of the attorneys for plaintiffs in error. It appears that McLane's attorneys knew of the existence of such deed of assignment at the time and also of the pendency of the partition suit involving the interest of W. A. Wilkerson, but that none of the defendants in error, plaintiffs below, had either actual or constructive knowledge of the existence of such assignment. Notwithstanding the pendency of the partition suit since August, 1921, McLane did not seek to intervene until about a month after the final judgment was rendered. Upon motion this plea was stricken out on the ground that McLane was guilty of laches in filing it. There was no error in this. Clearly McLane was guilty of laches in his long delay with knowledge of the facts chargeable to him. In any event, he is not prevented from recovery by separate suit, if necessary, of any property awarded in the partition to W. A. Wilkerson to which he was entitled under the assignment, and hence no injury has been done him. This assignment is therefore overruled.

For the reasons given, the judgment of the trial court awarding to Mrs. Ida Dorcas Bryant judgment against all other parties to said suit for the sum of $750 is reversed and judgment here rendered that she recover nothing by reason of her alleged shortage of land in the partition deed to her.

The judgment of the trial court in requiring the defendant Dave Wilkerson to account in the further partition for the sum of $450 is reversed, and the trial court is instructed to hear further evidence as to the fair market value at the time the deeds were executed of the 3-acre excess land received by him by mistake and that he be required to account to the W. W. Wilkerson estate for such value as found.

The judgment of the trial court as to Wm. Anse Wilkerson requiring him to account for $200 as excess received by him in the partition of said land is reversed, and judgment here rendered in his favor as to this particular item.

In all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part, and in part affirmed.